Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Suzanne B. Conlon | Sitting Judge if Other than Assigned Judge | Michael T. Mason |
|---|---|---|---|
| **CASE NUMBER** | 01 C 6157 | **DATE** | 2/21/2002 |
| **CASE TITLE** | Chamberlain Group vs. Interlogix, Inc. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]   For the reasons stated in the attached memorandum opinion and order, defendant's motion to compel plaintiff to respond to outstanding discovery [31-1] and plaintiff's motion to compel discovery [32-1] are granted in part and denied in part. All matters relating to the referral of this action having been concluded, the referral is closed and the case is returned to the assigned judge. Enter Memorandum Opinion and Order.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | Document Number |
| | No notices required. | 2 number of notices | |
| ✓ | Notices mailed by judge's staff. | FEB 22 2002 date docketed | |
| | Notified counsel by telephone. | | |
| | Docketing to mail notices. | | |
| | Mail AO 450 form. | docketing deputy initials | 41 |
| ✓ | Copy to judge/magistrate judge. | 2/21/2002 date mailed notice | |
| KF | courtroom deputy's initials | 02 FEB 21 PM 3:53 Date/time received in central Clerk's Office | KF7 mailing deputy initials |

# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| THE CHAMBERLAIN GROUP, INC. a Connecticut corporation, ) ) ) Plaintiff, ) ) v. ) ) INTERLOGIX, INC., ) a Texas Corporation, ) ) Defendant. ) | No. 01 C 6157 **DOCKETED** FEB 2 2 2002 |

## MEMORANDUM OPINION AND ORDER

Michael T. Mason, United States Magistrate Judge:

Before us are cross motions to compel from plaintiff The Chamberlain Group, Inc., ("Chamberlain") and defendant Interlogix, Inc. ("Interlogix") in this patent infringement case. In addition to ordinary requests that the other party respond to or expand upon regular interrogatories, the parties have a basic dispute about the order in which discovery should proceed in this case. We heard oral argument on the motions and are now ready to render our decision. As we explain below, our order will set out a basic structure for the resolution of the major issue in this case – the completion of a so-called "claim chart" – and then resolve the remaining discovery issues.

This is a patent infringement case in which Chamberlain alleges that certain of Interlogix's wireless security systems infringe on two of Chamberlain's patents for wireless technology. So far, Chamberlain has identified eleven of Interlogix's specific product lines that it contends contain the infringing technology, and suspects that there may be more. In order to proceed, both parties need to know exactly which products Chamberlain is

accusing of infringement and how the claims of its patents are "read" on Interlogix's products. The problem is that each party believes that the other should take the first step in defining the scope of alleged infringement. Chamberlain argues that it has given Interlogix as much information as it knows about the alleged infringement, but that without technical information about Interlogix's products, it cannot provide more specific information about how each of Interlogix's products infringe. It wants Interlogix to construe each of the patents' claims and then explain how its products do not infringe on the patent (or, if it cannot so deny, to admit infringement).

Interlogix argues that it should not have to do Chamberlain's investigation for it and that it is counter-intuitive to ask it to tell Chamberlain which of its products do not infringe the patents and how. It states (quite logically) that if asked to explain where Chamberlain's patent claims read on Interlogix's products, it will state that none of the claims are part of the products. We agree that Interlogix should not have to guess how Chamberlain believes that its patents are infringed, but we recognize that Interlogix must provide some basic discovery information to Chamberlain before it can complete a proper claim chart.

At oral argument, counsel for Chamberlain explained that the products it had identified as possibly infringing on the patents were those that contained what Interlogix calls "Learn Mode" technology. Chamberlain's patents include a technology for a learning function that it believes is infringed by Interlogix's Learn Mode, and it has asked Interlogix to produce the names and model numbers for all of its current and former products dating back to 1995 that contain the Learn Mode technology as well as provide technical information on how that technology works in Interlogix's products.

We find that Interlogix must provide this basic technical and model number

2

information to Chamberlain as a prerequisite to Chamberlain creating a claim chart. In so ordering, we note that identification of its Learn Mode products by Interlogix is not any sort of admission that this technology is the same as is contained in Chamberlain's patents, or that the Learn Mode products infringe upon those patents. That is for Chamberlain to argue and try to prove should this case reach the stage of a *Markman* hearing. Chamberlain has noticed up a 30(b)(6) deposition to obtain certain technical information from Interlogix about its Learn Mode wireless security systems which should provide some of the additional information Chamberlain needs. We thus order Interlogix to provide Chamberlain with information about its Learn Mode function, either through answers to interrogatories or the 30(b)(6) deposition, or both, as the first step in defining the scope of Chamberlain's claims.

After Interlogix provides such technical information to Chamberlain, Chamberlain must create a thorough claim chart that construes each of its patents' claims and then identifies how each element of the claims read on each of Interlogix's allegedly infringing products. At this point, Chamberlain has identified eleven such products, and its chart should cover all of them in addition to any other allegedly infringing products it identifies after receiving Interlogix's Learn Mode model names and numbers and technical information.

After Chamberlain produces its claim chart, Interlogix shall respond by identifying which of the claims it disputes and why. At this point, we expect the parties to work together on additional discovery requests that emerge as a result of this production, and remind Chamberlain that it is always obligated to amend its claim chart to include additional information it receives. This process should resolve Chamberlain's interrogatories 4, 5,

and 6 and Interlogix's interrogatory 5.

Next, Chamberlain's interrogatories 1, 2, and 3 ask for the factual basis for Interlogix's defenses that the patents are invalid under various patent statutes as well as unenforceable because of deceitful behavior. Plaintiff wants the defendant to provide the exact location (by deposition line number, etc.) of the facts that support these defenses. Defendant has provided some information, and says it cannot be more specific until it has plaintiff's claim chart. Similarly, Defendant's Interrogatory 4 asks for more specific information from the plaintiff about when the patents at issue were reduced to practice, including information about all inventors of the patented items.

We order both parties to respond to these interrogatories by providing the opposing party with all factual information responsive to the requests, including citations to the record as it currently stands. As discovery continues, the parties of course are under the continuing obligation to update their responses as more information becomes available. Thus, after Interlogix receives Chamberlain's claim chart, it must supplement its responses to identify each claim of the patent and the part of the statute that makes the claim invalid.

Plaintiff's interrogatory 11 and request to produce 4 both ask for information, including attorney's opinions, about the validity, enforceability or infringement of the patents. It argues that by claiming the defenses of laches and estoppel, Interlogix has waived the attorney-client privilege. Interlogix responds that its laches and estoppel defenses are based solely on its reliance on Chamberlain's inaction towards Interlogix, and that advice of its counsel played no role in its actions. This exact argument has been rejected in this Circuit, and if the defendant wishes to pursue its defenses of laches and estoppel, it must produce the opinions of its counsel related to the validity, enforceability

and infringement of the patents. These opinions are necessary for the plaintiff to try to prove that it was the advice of counsel, and not its own failure to enforce the patents, that led defendant to allegedly infringe. See Videojet Systems Int'l., Inc. v. Inkjet, Inc., No. 95 C 7016, 1997 WL 138008 (N.D.Ill., March 19, 1997) citing Southwire Co. v. Essex Group, 570 F.Supp. 643, 649-50 (N.D.Ill. 1983) and United States v. Exxon, 94 F.R.D. 246, 248 (D.C. 1981).

Defendant's interrogatory 15 asks the plaintiff to identify every meeting between the plaintiff and the PTO by date, participants and subject matter connected with the prosecution of the two patents at issue, and to produce all attorney time records for this time so that plaintiff can identify all meetings at which the attorneys were present. The plaintiff has already produced the entire patent file concerning the prosecution of the two patents which contain records of every meeting with the PTO, and we see no reason why it should produce time records for its attorneys, since this information is possibly privileged, overbroad, and will merely be duplicative of information already in the files.

Finally, both parties stated to the Court that they each have outstanding discovery which the other party had agreed in writing to produce, but has not yet done so. For example, Defendant notes that plaintiff has promised to produce organization charts and catalogues among other things, and to amend some of its answers to interrogatories and requests to admit. Although the plaintiff did not list its own outstanding discovery, we understand that defendant has been similarly tardy in its production. Therefore, we order each party to produce all outstanding discovery that has been promised in writing by Monday, February 25, 2002. Defendant also notes that it seeks license agreements that plaintiff has with other companies – especially a license agreement with Honeywell.

5

Plaintiff objects that it cannot produce confidential license agreements without the consent of the third parties, and that it has not been able to secure such consent.

We are not convinced that the parties ever had an agreement regarding the licenses, so we are hesitant to order their production outright. Instead, plaintiff and Honeywell have until February 26, 2002 to file any objections to the production of the Honeywell license. If there are no objections, plaintiff shall produce the license by February 28, 2002.

For the above reasons, plaintiff's and defendant's motions to compel are each granted in part and denied in part. It is so ordered.

Michael T. Mason
United States Magistrate Judge

Date: February 21, 2002